UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DKT. 13)**

I.   **Introduction**

Liz Banks ("Plaintiff") brought this action against JPMorgan Chase Bank, N.A. ("Defendant") and DOES 1 to 100, inclusive. Dkt. 1-1.[1] Defendant timely removed on the basis of diversity jurisdiction. Dkt. 1. The Complaint asserts claims that arise from a home loan secured by Plaintiff's residence. The loan was serviced by Defendant. After a claimed default by Plaintiff, a trustee's sale was held at which the residence was sold. Compl., Dkt. 1-1 at 2-3.

The Complaint advances nine causes of action against Defendant: (i) violation of the dual tracking provisions of the California Homeowner Bill of Rights ("HBOR"), Cal. Civ. Code § 2923.6(c); (ii) violation of the single point of contact provisions of HBOR, *id.* § 2923.7; (iii) failure to respond to a submitted application in violation of HBOR, *id.* § 2924.10; (iv) fraud; (v) unfair competition in violation of Cal. Bus. & Prof. Code § 17200; (vi) negligence; (vii) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.* & 12 C.F.R. § 1002.9; (viii) negligent infliction of emotional distress; and (ix) intentional infliction of emotional distress. Compl., Dkt. 1-1. Plaintiff seeks relief including compensatory damages, punitive damages, a declaration that Plaintiff is the rightful holder of title to the property and attorney's fees.

On August 26, 2014, Defendant moved to dismiss the Complaint ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 13. Plaintiff filed an opposition to the Motion on September 8, 2014, Dkt. 15, and Defendant filed a reply on October 20, 2014. Dkt. 16. The Court conducted a hearing on the Motion on November 3, 2014, and took the matter under submission. Dkt. 23.

For the reasons stated in this Order, the Motion is GRANTED IN PART. The Motion is GRANTED WITH PREJUDICE, *i.e.*, without leave to amend, as to the negligent infliction of emotional distress and intentional infliction of emotional distress claims. The Motion is GRANTED WITHOUT PREJUDICE, *i.e.*, with leave to amend, as to the fraud and ECOA claims.  The third and fifth prayers for relief, "[f]or

---

[1] The Complaint erroneously names Chase Bank, N.A. as the defendant. Dkt. 1-1; Dkts. 1, 4.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

declaration and determination that BANKS is the rightful holder of title to the property . . ." and "[f]or order removing the trustee's deed as a cloud on the title," are stricken, but with leave to amend. The Motion is DENIED as to all other claims. Plaintiff shall file any amended complaint no later than December 4, 2014. The Scheduling Order of November 3, 2014, Dkt. 23, is MODIFIED IN PART. The last day to amend or add parties is extended from November 26, 2014 to December 4, 2014.

**II.     Factual Background**

      A.     The Initiation of the Loan

Plaintiff and her husband purchased a home in Marina Del Rey, California (the "Property"). In 2003, Plaintiff obtained a variable interest rate loan from Greenpoint Mortgage Funding, Inc., which was secured by a first recorded deed of trust ("Deed") on the Property. Dkt. 1-1 at 2; Dkt. 15 at 4. The Deed was executed on March 17, 2003, and recorded on March 28, 2003. Dkt. 1, Ex. 2. Plaintiff alleges that, on June 8, 2012, a corporate assignment deed of trust was recorded, which listed Defendant as the entity responsible for receiving payments on Plaintiff's loan. Dkt. 15 at 4-5.

      B.     The HAMP Application: May 24, 2012 - December 26, 2012

In early 2012, Plaintiff defaulted on the loan. Compl., Dkt. 1-1 at 2. She "immediately applied for a mortgage modification in an attempt to avoid foreclosure and to remain current on her obligation." *Id.* Plaintiff alleges that, in May 2012, Defendant encouraged her to apply for a modification under the federal Home Affordable Modification Program ("HAMP"). Thereafter, on May 24, 2012, she submitted an application as Defendant had directed, supplying all necessary documentation. *Id.* at 2-3, 6. However, Plaintiff was ineligible for a HAMP modification at this time, because the outstanding balance on her loan was $877,442; this amount exceeded the $729,000 limit then in place for a HAMP modification. Opp'n, Dkt. 15 at 5.

Despite Defendant's alleged knowledge of Plaintiff's ineligibility for a HAMP modification, Plaintiff contends that it "continued to request more and more documents, ultimately requesting the same documents repeatedly," a process which continued "for many months." Compl., Dkt. 1-1 at 6.  On December 26, 2012, Defendant notified Plaintiff that her HAMP modification application had been denied because she had not submitted all requested documentation in a timely manner. *Id.* at 6. Plaintiff alleges that Defendant deliberately delayed the HAMP modification process "for the purpose of racking up default-related fees which [Defendant] gets to keep and exhausting BANKS of her energy in addition to her most valuable asset, her home." *Id.* at 7.

      C.     The Non-HAMP Applications: January 2013 - May 2014

In January 2013, Defendant directed Plaintiff to apply for a loan modification under a non-HAMP program. *Id.* She then submitted the same materials previously submitted during the HAMP modification process. *Id.* at 7-8. Defendant continued to request additional information, although it did not inform Plaintiff of what information was lacking in a detailed writing. This back-and-forth continued through July 2013. At that time, Defendant asked Plaintiff to provide copies of utility bills to prove her occupancy in the Property; Plaintiff did so. *Id.* at 8. Defendant claimed that Plaintiff did not timely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

provide this documentation, however, and it denied her application. *Id.* at 9.

In August 2013, Plaintiff sent a third application for modification; Defendant claims that it did not receive this document. *Id.* In January 2014, Defendant contacted Plaintiff to invite her to apply for other available loan relief programs. *Id.* Plaintiff alleges that, in response, she submitted an application containing the appropriate documentation. Defendant claims that it did not receive this submission. *Id.*

In May 2014, Plaintiff applied for a modification for the fifth and final time. *Id.* This application reflected a change in Plaintiff's financial position. Thus, her income had increased by $8,000 per month since her prior applications. Plaintiff alleges that she believed that this increase in income made her qualified for a loan modification under an applicable program. *Id.* at 9-10; Opp'n, Dkt. 15 at 6. Plaintiff sent this application to Defendant by UPS on or about May 15, 2014. *Id.* Once again, Defendant claims it did not receive this application. Compl., Dkt. 1-1 at 9-10. However, Plaintiff alleges that Defendant thereafter delayed a scheduled trustee sale of the Property from May 20, 2014 to June 12, 2014, and sent her a payment statement reflecting a new monthly payment amount, effective in July 2014. *Id.*

Throughout the application modification process, Plaintiff claims she was assigned multiple single points of contact ("SPOCs") by Defendant. *Id.* at 12-14. Thus, the Complaint alleges that: her first SPOC encouraged her to apply for a HAMP modification; her second SPOC continued to request documents under this application; and her third SPOC denied this application, and asked her to apply under the non-HAMP program. Although it is not clear from the allegations in the Complaint, it appears that Plaintiff's subsequent non-HAMP applications may have been handled by different SPOCs. *Id.* at 13. Plaintiff alleges that the continuous changing of the SPOC resulted in Defendant's loss of her final three modification applications. *Id.* Further, Plaintiff alleges that she continued to incur fees and penalties when Defendant claimed she did not submit a complete application. *Id.* at 11.

    D.    Foreclosure and Sale of the Property

Throughout the HAMP and non-HAMP application processes, Plaintiff alleges that Defendant was "actively moving towards foreclosure of the home and took clear steps to satisfy this state's requirements toward a non-judicial foreclosure, including recording a notice of default and notice of trustee's sale." *Id.* at 3. Although Defendant postponed a foreclosure while Plaintiff's applications were pending, she alleges that it "continued to move the foreclosure process forward by regularly recording a notice of trustee sale and keeping the trustee sale just days away at any given moment." *Id.* at 8.

About a week after Plaintiff sent the May 15, 2014 application, she called Defendant to inquire about the status of her loan. *Id.* at 10. Defendant told her that it had not received a loan modification application and that the trustee's sale scheduled for June 12, 2014 would proceed. *Id.* The trustee's sale occurred on that date, and the property was sold to a third party. *Id.* at 3. According to records maintained by Los Angeles County Recorder's Office, which were notarized on June 20, 2014 and filed with that Office on June 24, 2014, at the time of the trustee's sale the amount of unpaid debt together with the associated costs due was $982,542.50. Dkt. 1, Ex. 2. The property was sold for $1,550,100.00. *Id.*

Plaintiff alleges that, based on Defendant's representations, she believed that the loan would be

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

modified. Consequently, she did not take other remedial actions, including borrowing money from family members in order to make loan payments, or selling the Property on the open market for an amount greater than paid by the buyer at the Trustee's sale. *Id.* at 26-27. In her Opposition, Plaintiff argues that "based on a comparative market analysis of Plaintiff's property at the time of sale, fair market value would have been valued at approximately $2.5 million to 2.8 million dollars." Opp'n, Dkt. 15 at 8. There are no such allegations in the Complaint.

### III. Analysis

#### A. Legal Standard

To withstand a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-79. Dismissal of a claim is warranted where there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Thus, where a set of facts, even if true, would not entitle the plaintiff to relief, dismissal is appropriate. *Id.*

#### B. Application

##### 1. Failure to Tender

Defendant argues that, "[a]ny claims in the Complaint that rely upon a contention that the sale was improper should . . . be dismissed," because there is no allegation that Plaintiff tendered the amount due on the loan prior to the Trustee's sale. Mot., Dkt. 13 at 14-16. "It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security. This rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578-79 (Cal. Ct. App. 1984); *see also Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 526 (2011) ("A full tender must be *made* to set aside a foreclosure sale, based on equitable principles.").

Plaintiff does not dispute that she did not tender the amount due on the loan, but argues that an exception to the tender rule applies. Opp'n, Dkt. 15 at 7. Plaintiff contends that no tender is required "when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary," and that she was "robbed of large amounts of equity due to the actions of JPMC in selling the property at foreclosure sale." *Id.* at 7-8 (citing *Hauger v. Gates*, 42 Cal. 2d 752 (1954)). *See also In re Worcester*, 811 F.2d 1224, 1230 (9th Cir. 1987) (recognizing, but declining to apply, *Hauger*). As noted, Plaintiff's Opposition claims that the "fair market value [of the Property] would have been valued

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

at approximately $2.5 million to $2.8 million dollars," and that because the value she stood to lose at the foreclosure sale exceeded the value of the debt, no tender was required under *Hauger*. *Id.* at 8. As also noted, these claims do not appear in the Complaint. Defendant responds that this exception applies only to counterclaims that are "existing at the time of default or are more definitive than Plaintiff['s]." Reply, Dkt. 16 at 8 (citing *Ward v. Pickett*, 2013 WL 5496549, at *11 (N.D. Cal. Oct. 3, 2013)).

The Complaint does not satisfy the *Hauger* exception to the tender rule. In *Hauger*, the plaintiffs' cross-complaint concerned the defendants' failure to deliver certain personal property as promised in a written agreement executed prior to default. *Hauger*, 42 Cal. 2d at 753-54. The value of this property exceeded the value of the installment payments then due under the promissory note and deed of trust. *Id.* at 754. Even if *Hauger* could be read to apply to claims that arise after default on a secured loan, but before a trustee's sale, the Complaint does not allege that these claims exceeded the balance of the loan that was due at the time of the sale.

The Complaint alleges that when Plaintiff was first in default on the loan, its outstanding balance was "over $800,000," and when the Property was sold, the balance was $982,542.50. Compl., Dkt. 1-1 at 17; Opp'n, Dkt. 15 at 8. Even if this entire increase were due to Defendant's wrongful, pre-foreclosure actions, and even if these damages were trebled under Cal. Civ. Code § 2924.12,[2] at some point prior to the Trustee's Sale, Plaintiff would have been required to tender Defendant several hundred thousand dollars. To the extent that *Hauger* applies to an offset based on damages arising from the foreclosure sale itself, which would be an extension of its holding, the Complaint does not support such an offset theory. The claim that the Property had a fair market value of $2.5 million to $2.8 million at the time of the Trustee's sale is not alleged in the Complaint. The Complaint alleges only that Plaintiff "could get a much better price giving her the equity and making [Defendant] whole." That allegation is too speculative plausibly to support such a reading. Compl., Dkt. 1-1 at 26; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Because Plaintiff has failed to allege tender, her third and fifth prayers for relief, "[f]or declaration and determination that BANKS is the rightful holder of title to the property . . ." and "[f]or order removing the trustee's deed as a cloud on the title," are stricken with leave to amend. *Id.* at 35. However, because all of Plaintiff's causes of action seek damages in addition to equitable relief, no cause of action is stricken on this basis.

      2.    HBOR Causes of Action

           a)    Defenses General to These Claims

---

[2] "If the court finds that the material violation [of select HBOR provisions including dual tracking, SPOC, and notification requirements] was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)." Cal. Civ. Code § 2924.12.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

Plaintiff's first three causes of action -- violation of dual tracking, violation of single point of contact, and failure to notify -- all arise from provisions of HBOR, Cal. Civ. Code § 2923.5 *et seq*. Defendant raises two defenses that are unique to these claims. First, Defendant argues that HBOR, which took effect on January 1, 2013, does not apply retroactively. Mot., Dkt. 13 at 16. Second, Defendant argues that it is exempt from HBOR because it is a signatory to a consent order for which HBOR establishes a safe harbor. *Id.* at 17.[3]

(1)     Non-Retroactivity of HBOR

"California courts comply with the legal principle that unless there is an 'express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature ... must have intended a retroactive application.'" *Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th 828, 841 (2002); *see also Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1153 (N.D. Cal. 2013) (applying this principle in concluding that HBOR does not apply retroactively). Plaintiff does not identify any such retroactivity provision in HBOR. However, she argues that "several courts have held that protections apply even if the loan modification application was submitted prior to 2013 as long as the servicer moves forward with a foreclosure after January 1, 2013 where an application is still pending." Opp'n, Dkt. 15 at 9. She also argues that HBOR applies to the four applications she made after January 1, 2013. *Id.* Defendant argues that "HBOR is inapplicable to any alleged conduct that occurred in 2012 or before, particularly with regard to the loan modification application that Plaintiff submitted in May of 2012 and JPMC denied in December of 2012." Reply, Dkt. 16 at 11.

Plaintiff claims that HBOR protections apply only to those applications of whose acceptance or denial she was not notified prior to January 1, 2013. Opp'n, Dkt. 15 at 9. Plaintiff acknowledges that she was notified of the termination of the HAMP application on December 26, 2012, before HBOR took effect, and that she submitted her second application in January 2013. Compl., Dkt. 1-1 at 6-7. Defendant does not contend that HBOR does not apply to this or subsequent applications. Thus, HBOR does not apply to Plaintiff's HAMP application, which she submitted on May 24, 2012 and which was terminated on December 26, 2012. *Id.* at 2-3, 6. However, to the extent any of Defendant's subsequent determinations relied on the pre-2013 handling of the HAMP application, they are not exempt from HBOR because their consideration is not a retroactive application of the statute. *See Ware v. Bayview*

---

[3] Defendant also argues that the HBOR claims fail because the Complaint does not provide dates as to the notice of sale and the notice of trustee sale, and does not adequately allege that an active loan modification was ongoing. Reply, Dkt. 16 at 8-9. In addition, at the hearing on the Motion, Defendant raised -- for the first time -- the argument that the Complaint fails to allege that the Property is Plaintiff's primary residence or that the lien at issue was a first lien, as required for HBOR liability. Drawing each permissible inference in favor of the non-moving party, the Complaint can be interpreted to allege that: (i) Defendant gave a notice of sale and notice of trustee sale after the effective date of HBOR; (ii) an active modification process was ongoing; (iii) the Property is Plaintiff's primary residence; and (iv) the lien was a first lien. The latter two of these allegations are supported by Plaintiff's account of the HAMP application, for which she says she was ineligible only due to the amount of the principal balance. Because HAMP covers only first-lien loans on owner-occupied properties, it may be inferred that both of these conditions were met. Nevertheless, the Complaint is ambiguous as to the four points raised by Defendant. Any amended complaint must address these issues.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

*Loan Servicing, LLC*, 2013 WL 6247236, at *5 (S.D. Cal. Oct. 29, 2013).

          (2)    Consent Decree Safe Harbor, Cal. Civ. Code § 2924.12(g)

Defendant is a signatory to a consent decree entered in *United States v. Bank of America Corp. et al.*, United States District Court for the District of Columbia case number 1:12-cv-00361 RMC. Defendant argues that it is in full compliance with the relevant terms of a Settlement Term Sheet executed pursuant to the Decree. Therefore, it contends that it is exempt from HBOR liability as to Plaintiff's claims under Cal. Civ. Code § 2924.12(g). That subsection provides:

> A signatory to a consent judgment entered in the case entitled *United States of America et al. v. Bank of America Corporation et al.*, filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

*Id.*

Plaintiff argues that § 2924.12(g) does not apply because the allegations in the Complaint concern activities which, if they occurred, would constitute dual tracking in violation of the terms of the settlement, and would make Defendant ineligible for the safe harbor protection. Opp'n, Dkt. 15 at 9-10.[4] Although there is no binding state or federal appellate authority on the issue, several federal district courts have considered § 2924.12(g) defenses to HBOR liability. They have concluded that § 2924.12(g) compliance is an affirmative defense for which the defendant bears the burden of proof, and that summary judgment, rather than the motion to dismiss phase, is generally the appropriate time to seek application of this defense. *See Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890, at *5-6 (C.D. Cal. Sept. 26, 2014); *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *8 (C.D. Cal. Sept. 3, 2014); *Gilmore v. Wells Fargo Bank N.A.*, 2014 WL 3749984 at *3 n.4, (N.D. Cal. July 29, 2014); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2014 WL 890016, at *9 (N.D. Cal. Mar. 3, 2014). To overcome this defense on motion to dismiss, a plaintiff must, at most, allege behavior that violates the Consent Decree in her pleadings, although she need not mention the Consent Decree itself. *Segura*, 2014 WL 4798890, at *5-6.

Plaintiff's Complaint is sufficient to overcome this defense for purposes of this Motion. The Consent Decree bars several activities that are also forbidden by HBOR. Consent Judgment as to J.P. Morgan Chase & Company and J.P. Morgan Chase Bank, N.A. ("Consent Decree"), *United States v. Bank of America Corp. et al.*, 1:12-cv-00361 RMC, Dkt. 10, Ex. 1 (D.D.C. Apr. 4, 2012). These include dual tracking, *id.* at A-17 to A-21, single point of contact violations, *id.* at A-21 to A-23, failure to make

---

[4] Plaintiff claims that Defendant's actions violate "Settlement Terms codified under 12 CFR 1024.41(g)." Opp'n, Dkt. 15 at 9. This citation and the relevant language concern Regulation X of the Real Estate Settlement Procedures Act, which is not a codification of the consent decree.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

modification decisions within 30 days of receipt of the complete loan application, *id.* at A-26, and failure to notify borrowers promptly of final denial of modification requests, *id.* At a minimum, the Complaint alleges violations of the SPOC requirements of the Consent Decree.[5] *See* Compl., Dkt. 1-1, at 12-14. Thus, for purposes of this Motion, Defendant has not established immunity under § 2924.12(g).

    b)  First Cause of Action: Violation of Dual Tracking

Plaintiff asserts that Defendant engaged in dual tracking in violation of Cal. Civ. Code § 2923.6. That statute provides:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> > (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

---

[5] Defendant claims that, even if all of Plaintiff's allegations are taken as true, because there is no violation of the Consent Decree, HBOR immunity applies. Reply, Dkt. 16 at 11-12. Defendant relies upon ¶ H(12) of the consent decree, which provides:

> Notwithstanding any other provision of this Agreement, and to minimize the risk of borrowers submitting multiple loss mitigation requests for the purpose of delay, Servicer shall not be obligated to evaluate requests for loss mitigation options from (a) borrowers who have already been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of HAMP or proprietary modification programs, or (b) borrowers who were evaluated after the date of implementation of this Agreement, consistent with this Agreement, unless there has been a material change in the borrower's financial circumstances that is documented by borrower and submitted to Servicer.

Consent Decree at A-29, ¶ H(12). However, Plaintiff does allege that there was a material change in her financial circumstances, which she documented and submitted to Defendant. Compl., Dkt. 1-1 at 9-10. Even if Defendant is correct that it was "under no obligation to review any of her subsequent loan modification applications," Reply, Dkt. 16 at 12, and even if, for that reason, Plaintiff's dual-tracking and failure-to-notify allegations do not concern violations of the Consent Decree, her SPOC allegations would be sufficient to do so. The Consent Decree requires the assignment of a SPOC not only on a borrower's first application for a modification, but "until such time as Servicer determines in good faith that all loss mitigation options have been exhausted." Consent Decree at A-22, ¶ 5. Defendant allegedly solicited Plaintiff's modification applications on several occasions between 2012 and 2014 and shifted Plaintiff's point of contact on more than one occasion during this period. Compl., Dkt. 1-1 at 7-10, 12-14. If this allegation is true, a violation of the Consent Decree would be shown and § 2924.14(g) would not apply.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.
>
> . . . .
> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

This provision is designed to prevent the "practice of negotiating with homeowners in default on their loans for a loan modification while simultaneously advancing the foreclosure process[, which] is commonly referred to as 'dual tracking.'" *Singh v. Bank of America, N.A.*, 2013 WL 1858436, at * 2 (E.D. Cal. 2013). Subsection (g) limits the lender's obligation to stay proceedings on review of subsequent applications unless the borrower has presented documents that reflect a material change in financial circumstances.

Plaintiff has sufficiently pleaded a violation of the dual tracking provisions. This is so notwithstanding her argument that "since proper denial was never provided, the application submitted in January 2013 should still be in effect as one continuous application through May of 2014." Compl., Dkt. 1-1 at 14. This argument is unpersuasive because even if the HAMP application in 2012 is discounted because Defendant directed Plaintiff to apply for relief for which she was ineligible from the outset of the application process, Defendant gave her notice in July 2013 that her January 2013 application had been denied. *Id.* at 8. More persuasive are the allegations that, in May 2014, Plaintiff sent Defendant a complete application documenting a "significant positive change in financial circumstances," which "removed any doubt as to whether BANKS could qualify under national guidelines for a modification based on financial factors." *Id.* at 9-10.[6] Notwithstanding this application, Defendant did not stay the trustee's sale on the Property or fulfill any of the requirements of Cal. Civ. Code § 2923.6(c)(1)-(3). Defendant responds that the Complaint fails to allege that the application was complete, that Defendant received it, or the dates of foreclosure and sale. However, these elements are pleaded sufficiently to meet the standards of Fed. R. Civ. P. 8.

For these reasons, the Motion is DENIED as to the dual tracking claim.

                    c)       Second Cause of Action: Violation of Single Point of Contact ("SPOC")

---

[6] The Complaint is not as specific as the "additional $8,000 in income per month" figure. As noted, it was presented for the first time in the Opposition, Dkt. 15 at 6. However, the present allegation is sufficiently grounded in facts that it is not conclusory.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

Cal. Civ. Code § 2923.7 requires mortgage servicers to provide borrowers with a SPOC responsible for communicating with the borrower about foreclosure prevention alternatives, coordinating receipt of all borrower documents, and having access to current borrower information. Plaintiff alleges that Defendant violated this obligation by repeatedly changing the person or group with whom she was to have contact. Plaintiff also claims that the purported SPOC failed to carry out duties required under § 2923.7, including to inform her of pertinent deadlines and to alert her if documents were missing from her application. Compl., Dkt. 1-1 at 13-14.

Defendant argues that Plaintiff "admits that she was assigned a single point of contact," which "discharged JPMC's statutory duties," and the Complaint merely expresses "dissatisfaction with the loan modification application process itself." Mot., Dkt. 13 at 22. This interpretation of the allegations as to the statutory obligations is inconsistent with the language of the Complaint. Defendant also argues that this claim fails because Plaintiff did not plead actual economic damages. Reply, Dkt. 16 at 14. Defendant cites language from Cal. Civ. Code § 2924.12(b) to the effect that a servicer may be liable for actual economic damages resulting from a material violation of Section 2923.7, but omits the following language of the statute; it provides that "[i]f the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)." *Id.*; Cal. Civ. Code § 2924.12(b). Plaintiff alleges that Defendant's conduct was intentional. *E.g.*, Compl., Dkt. 1-1 at 4 (describing SPOC violations as "sophisticated shell game designed to fatigue BANKS").

For these reasons, the Motion is DENIED as to the SPOC claim.

        d)  Third Cause of Action: Failure to Notify Under HBOR

The Complaint alleges that "[u]nder the California Homeowner's Bill of Rights, servicers are required to respond to borrower's [sic] submitted complete application within 30 days," and that "banks and their servicers are required by Civ. Code 2923 to provide the borrower with a letter confirming receipt of the application within 5 days. That letter is to include a detailed list of any documents that are missing and need to be submitted." Compl., Dkt. 1-1 at 14-15. The only authority Plaintiff cites for the first interpretation of the statute is a district court opinion concerning the requirement that mortgage servicers provide written determinations as to a borrower's first application, not that written determinations be provided within 30 days of any application. *Id.*; *see Lapper v. SunTrust Mortgage, N.A.*, 2013 WL 2929377 (C.D. Cal. June 7, 2013).[7] Defendant claims that "HOBR does not set a thirty-day limit on the time to respond to even complete loan modification applications," Reply, Dkt. 16 at 14. Plaintiff has not cited any contrary provision.

Defendant does not respond to Plaintiff's argument that it violated HBOR by failing to provide letters confirming receipt of applications within five days. This requirement, which is not limited to first applications, appears in Cal. Civ. Code § 2924.10; § 2923 is incorrectly cited in the Complaint. Although

---

[7] The relevant portion of *Lapper* concerned an alleged violation of § 2923.6(c)(1).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

this provision does not apply to Plaintiff's pre-2013 HAMP application, it does apply to her four later applications. Therefore, the Complaint adequately alleges a violation. Plaintiff alleges that Defendant failed to meet this requirement as to the January 2013 application and that its failure resulted in its denial. Thus, Plaintiff alleges that Defendant did not timely notify her that it needed to receive and review her utility bills to confirm that she resided at the Property. Dkt. 1-1 at 8-9. For reasons discussed as to the prior cause of action, Defendant's contention that Plaintiff's claim fails because she did not plead economic damages is unpersuasive.

For these reasons, the Motion is DENIED as to this claim.

   3.  <u>Other Causes of Action</u>

     a)  Fourth Cause of Action: Fraud

Defendant argues that the fraud claim is not pleaded with particularity as required by Fed. R. Civ. P. 9(b). Mot., Dkt. 13 at 24-27. Defendant argues that Plaintiff fails properly to allege misrepresentation, damages, or reasonable reliance. *Id.* Plaintiff does not dispute this argument, but "requests a stay of decision on this issue and requests a leave to amend her complaint." Opp'n, Dkt. 15 at 12.

For these reasons, the Motion is GRANTED without prejudice, *i.e.*, with leave to amend, as to this claim.

     b)  Fifth Cause of Action: Unfair Business Practices

Plaintiff alleges that Defendant's actions constitute unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*. That statute prohibits "any unlawful, unfair or fraudulent business act or practice." This section "defines 'unfair competition' very broadly, to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 395 (1992)). To establish standing under § 17200, a plaintiff "must demonstrate injury in fact and a loss of money or property caused by unfair competition." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008).

Plaintiff adequately pleads both unlawfulness and standing. The alleged violations of HBOR, discussed above, are unlawful for purposes of § 17200. *See, e.g.*, *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1166 (N.D. Cal. 2013) (HBOR violations may be unlawful business practices under § 17200). Plaintiff also alleges that Defendant shifted her point of contact and delayed its responses to her applications for the purposes of "string[ing] BANKS along and collect[ing] default-related fees." Compl., Dkt. 1-1 at 21-22.

For these reasons, the Motion is DENIED as to the § 17200 claim.

     c)  Sixth Cause of Action: Negligence

"In order to establish negligence under California law, a plaintiff must establish four required elements:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

(1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). Defendant argues that Plaintiff fails to state a claim of negligence "because there is no common law duty of care in the traditional lender/servicer-borrower relationship." Mot., Dkt. 13 at 29. Plaintiff contends that this traditional rule does not apply to the relationship between loan servicers and borrowers in the context of certain loan modifications. Opp'n, Dkt. 15 at 15.

*Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089 (Cal. Ct. App. 1991), provides the basic framework California courts use to analyze this issue. It holds that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 1096. Citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958), the Court of Appeal identified six factors for determining whether an exception to this general rule applies: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark*, 231 Cal. App. at 1098.

Plaintiff claims that all of these elements are satisfied because: (1) the modification or non-modification of Plaintiff's loan would determine whether she could remain in the Property; (2) the harm of delay, which included improper fees and damaged credit, was foreseeable; (3) Defendant knew or should have known that Plaintiff would suffer injury; (4) Defendant's conduct was the proximate cause of Plaintiff's injury; (5) Defendant's conduct was morally blameworthy because of the harm it caused Plaintiff, and also because Defendant benefitted from the delay by collecting increased penalty fees; and (6) public policy, as reflected in recent legislation and regulation, favors the avoidance of wrongful foreclosures. Compl., Dkt. 1-1 at 23-29.

The California Courts of Appeal have reached different conclusions as to this issue. *Compare Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (2014) (servicer has no general duty to offer modification, but special relationship does arise when servicer agrees to consider borrower's application for modification), *and Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 906 (2013), *as modified on denial of reh'g* (Mar. 7, 2013) (duty of care arises with respect to commercial mortgage lending), *with Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013) (residential loan modification is traditional lending activity, and does not create duty of care).[8]

Federal district courts in California have reached different results. *Compare, e.g., Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014) (under *Alvarez* duty of care exists once lender offers borrowers opportunity to apply for a modification), *Penermon v. Wells Fargo Home*

---

[8] The Ninth Circuit has issued two decisions on this issue that are without precedential effect. Each had a different result, based on recent decisions by California Courts of Appeal. *Compare Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 570 (9th Cir. 2014) (on review of motion for summary judgment, applying *Lueras* to find no duty, and limiting *Jolley* to construction lending), *with Yau v. Deutsche Bank Nat. Trust Co. Americas*, 525 F. App'x 606, 609 (9th Cir. 2013) (reversing trial court's dismissal with prejudice of residential borrowers' negligence claim in light of recent *Jolley* decision).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

*Mortgage*, 2014 WL 4273268 (N.D. Cal. Aug. 28, 2014) (plaintiff was not entitled to modification, but "once [defendant] provided Plaintiff with the loan modification application and asked her to submit supporting documentation, it owed her a duty to process the completed application once it was submitted"), *and Chancellor v. OneWest Bank*, 2012 WL 1868750 (N.D. Cal. May 22, 2012) (allegation that lender failed properly to process loan modification application it had solicited stated a claim for purposes of motion to dismiss), *with Badame v. JP Morgan Chase Bank, N.A.*, 2014 WL 585451 (C.D. Cal. Feb. 13, 2014) (no duty created by modification application), *and Williams v. Wells Fargo Bank, NA*, 2014 WL 1568857 (C.D. Cal. Jan. 27, 2014) (applying *Lueras* to find no duty).

Taken together, these cases establish that traditional money-lending activity does not create a duty of care (*Nymark*), and that a loan modification is generally deemed a traditional money-lending activity (*Lueras*). They also support the conclusion that servicer conduct during the modification negotiation process may create a special relationship and a resulting duty of care (*Alvarez*). Plaintiff has sufficiently alleged the creation of such a relationship.[9] She claims that Defendant "induced [her] to needlessly apply for a program (HAMP) under which she could never qualify," "directed" her to apply for a modification in January of 2013, and sent her a letter "soliciting [her] to contact them because they have programs to help." Compl., Dkt. 1-1 at 7-10. For purposes of this Motion, these solicitations are sufficient to allege that Defendant had a duty to exercise due care in the processing of her applications. In addition, Plaintiff has alleged that Defendant breached the duty through its failure timely to process the documents and its purposeful loss of the documents. She has also alleged resulting damages in the form of accrued fees, damaged credit, and her own inaction in reliance on Defendant's representations.

For these reasons, the Motion is DENIED as to this claim.

    d)  Seventh Cause of Action: Violation of the Equal Credit Opportunity Act

Plaintiff alleges that Defendant violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. Compl., Dkt. 1-1 at 29-31. ECOA makes it unlawful for any creditor to discriminate against any applicant "on the basis of race, color, religion, national origin, sex or marital status, or age," because the applicant's income derives from a public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. 15 U.S.C. 1691(a). Specifically, Plaintiff alleges that Defendant's failure timely to notify her of its modification decisions violated 12 C.F.R. § 1002.9, an implementing regulation of ECOA that became effective on December 30, 2011. *See* Equal Credit Opportunity (Regulation B), 76 Fed. Reg. 79,442, 79,450-79,451 (Dec. 21, 2011)

---

[9] A prior decision of this Court more strictly construed the pleading requirements for a negligence claim based on loan modification, and held that the plaintiff in that action failed to allege unique circumstances giving rise to such a duty. *Caldwell v. Wells Fargo Bank, N.A. et al.*, LA CV12-09373 JAK (FFMx), Dkt. 35 (C.D. Cal. Feb. 12, 2013). This decision preceded the California Court of Appeal's decision in *Alvarez*, which is the most recent and persuasive statement of California law in this area. *See Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890, at *13 (C.D. Cal. Sept. 26, 2014) ("While sympathetic to [the servicer's] arguments, this Court must be directed by California law as established by the California courts, and it determines the decision in *Alvarez* to be the most relevant, recent, and well-reasoned decision on the question.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

(codified in relevant part at 12 C.F.R. § 1002.9). Under this provision, a creditor must notify an applicant of its decision to provide credit, deny credit, or make a counteroffer within 30 days of receiving a completed application. 12 C.F.R. § 1002.9.

Defendant argues that ECOA does not provide a basis for a claim by Plaintiff for four reasons. First, Defendant argues that ECOA does not apply to loan modifications, but that even if it did apply under some circumstances, it does not where the borrower is in default. Mot., Dkt. 13 at 33. Second, Plaintiff has failed to allege that she was qualified for modification. *Id.* Third, Plaintiff has not properly alleged that she submitted a complete application for modification. *Id.* at 34. Finally, Plaintiff fails to state a claim under ECOA because she has not alleged that she is a member of a protected class or that she was denied credit on the basis of her membership in such a class. *Id.* at 32-33. These arguments are addressed in this sequence.

*First*, ECOA provides that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). In addition, "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." *Id.* § 1691(d)(2). "Adverse action" "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." *Id.* § 1691(d)(6). The Complaint alleges that Plaintiff defaulted on the loan, Dkt. 1-1 at 2, and does not allege that the default was cured prior to foreclosure. Thus, to the extent that Plaintiff's ECOA claim is based on § 1691(d)(2), it fails. The actions of Defendant described in the Complaint are not adverse actions for purposes of ECOA. However, § 1691(d)(1) is not limited to adverse actions, and applies generally to "completed application[s] for credit." *See Vasquez v. Bank of Am., N.A.*, 2014 WL 1614764, at *3 (N.D. Cal. Apr. 22, 2014) (dismissing defaulting borrower's § 1691(d)(2)-(6) claims, but refusing to dismiss her § 1691(d)(1) claim, for this reason).

Defendant cites a district court case, *Franczak v. Suntrust Mortgage Inc.*, 2013 WL 843912 (N.D. Cal. Mar. 6, 2013), for the proposition that loan modifications are not "applications for credit" for purposes of ECOA. Mot., Dkt. 13 at 33. However, in *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013), the Ninth Circuit reversed a district court's dismissal of an adverse-action ECOA claim concerning a loan modification. *Schlegel* did not address whether modifications constituted applications for credit. 720 F.3d at 1210-11. Other courts, including the Seventh Circuit, have expressly held that loan modifications are applications for credit. *See Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924, at *13 (N.D. Cal. Nov. 12, 2013) (summarizing cases, including *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011), and holding the same).

Plaintiff alleges that Defendant failed to give her notice of its action within 30 days after its receipt of her applications. Compl., Dkt. 1-1 at 30-31. This allegation is sufficient to state a claim under § 1691(d)(1) if all of the other ECOA elements are satisfied. *See also* 15 U.S.C. § 1691e ("Any creditor who fails to comply with *any requirement imposed under this subchapter* shall be liable to the aggrieved applicant for any actual damages sustained by such applicant.") (emphasis added); 12 C.F.R. § 1002.9 ("A creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application.").

*Second*, neither the statute nor any Ninth Circuit decision states that qualification for credit is a

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

necessary element of a § 1691(d)(1) claim. Defendant relies upon a district court opinion, *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039 (N.D. Cal. 2009), which followed out-of-circuit authority in holding that, to state an ECOA discrimination claim, a plaintiff must allege that "(1) she is member of protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified." *Id.* at 1045. Even if this is required in more general ECOA discrimination claims, which *Hafiz* concerned, it does not appear to be applicable to claims under § 1691(d). That provision allows a party to state a cause of action even if it is not denied credit where a creditor simply fails to process their application in a timely manner. Thus, Plaintiff's failure to plead her qualification for credit does not defeat her ECOA claim.

*Third*, Plaintiff adequately pleads that her modification applications were complete. Defendant claims that she failed to do so because the Complaint states that she received a number of notifications that her application was incomplete. Mot., Dkt. 13 at 34. However, the Complaint does not accept the accuracy of these notifications, but rather alleges that they were false, and part of a scheme to prolong the application process and extract additional fees from Plaintiff. *See* Compl., Dkt. 1-1 at 6-9 (stating that Plaintiff provided all necessary information in her HAMP application, and that she supplied the same necessary information in connection with subsequent applications). Thus, for purposes of this Motion, Plaintiff has adequately pleaded the completeness of her applications for loan modification.

*Fourth*, The Complaint contains no allegations that Plaintiff's modification was denied because she had a protected status under ECOA. However, Plaintiff contends that "procedural violations of ECOA exist independent of discrimination." Opp'n, Dkt. 15 at 21. In support of this proposition, Plaintiff cites "15 USC 1691(e)(a)" [sic], *Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986), and *Dufay v. Bank of America*, 94 F.3d 561 (9th Cir. 1996),. Opp'n, Dkt. 15 at 21. This argument is unpersuasive.

15 U.S.C. § 1691(e)(a) does not exist, and it is unclear to what provision of ECOA Plaintiff may have meant to cite. § 1691(e) generally refers to the requirement that creditors furnish to applicants copies of written evaluations and appraisals developed in connection with their loan applications. § 1691e(a) establishes that there is a private right of action under ECOA. Elsewhere in her briefing, Plaintiff refers to a different section -- § 1691a(b). It defines "applicant" to mean "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." However, to view this definition in isolation is to ignore the requirement of § 1691(a) that discrimination against an applicant occur "on the basis of" or "because" of a protected status under ECOA.

§ 1691(d) sets forth the procedural requirement that creditors notify applicants of adverse actions. It does not define the failure to do so as a form of "discrimination." This is the provision implemented by 12 C.F.R. § 1002.9. *Thompson*, the Tenth Circuit case cited by Plaintiff, quoted a district court opinion stating that "[i]f a creditor fails to satisfy these requirements, he is in violation of the ECOA, regardless of whether he engaged in any prohibited discriminatory action." *Thompson*, 807 F.2d at 166. There is no parallel Ninth Circuit holding. In *Dufay*, summary judgment had been granted against the plaintiffs on the basis of the defendant's alleged compliance with the procedural requirements of the ECOA. *Dufay*, 94 F.3d at 562. The requirements that there be discrimination and that plaintiffs be member of a protected class were not issues on appeal, and were not addressed. But, in *Schlegel v. Wells Fargo*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

*Bank, NA*, 720 F.3d 1204, 1210 (9th Cir. 2013), the Ninth Circuit suggested that § 1691(d) was related to the statutory purpose of barring discrimination:

> ECOA . . . makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). *One way that ECOA effectuates this goal is through its notice requirement*, which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Id. § 1691(d)(2).

720 F.3d at 1210 (emphasis added). *See also Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 990 (N.D. Cal. 2012) (dismissing an ECOA § 1691(d) claim as insufficiently pleaded in part because "Plaintiff does not allege that he is a member of a class protected by ECOA").

The Complaint does not allege that Plaintiff is a member of a class protected by ECOA or that Defendant's alleged failure to provide the required notifications was due to her protected-class status. However, at the November 3, 2014 motion hearing, counsel for Plaintiff represented that she was a member of several protected classes. For these reasons, the Motion is GRANTED without prejudice, *i.e.*, with leave to amend, as to the ECOA claim.

e)      Eighth Cause of Action: Negligent Infliction of Emotional Distress

Defendant argues that Plaintiff's negligent infliction of emotional distress claim fails for two reasons. First, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object," California law only recognizes this cause of action "only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." Mot., Dkt. 13 at 31 (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993)). Second, "with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." *Id.* Defendant contends that none of Plaintiff's claims provides a factual basis for a negligent infliction of emotional distress claim. Mot., Dkt. 13 at 32. Plaintiff's Opposition, which discusses the other eight causes of action, is silent as to this claim.

In light of the lack of factual allegations in the Complaint in support of this claim, Plaintiff's silence may considered as non-opposition to this element of the Motion. *Cf.* Local Rule 7-9 (requiring the filing of opposing papers to motions); Local Rule 7-12 (failure to file any required document may be deemed consent to the granting or denial of the motion).

For these reasons, the Motion is GRANTED with prejudice, *i.e.*, without leave to amend, as to this claim.

f)      Ninth Cause of Action: Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant intended to inflicted emotional distress by delaying the processing of her applications, that Defendant's representatives on numerous occasions communicated their knowledge that the loss of her home would cause Plaintiff emotional distress, and that the loss of the Property, "the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

only home her daughter knows," and the property in which Plaintiff and her husband have lived for "many years," is causing her to "suffer severe emotional distress." Compl., Dkt. 1-1 at 34. Defendant argues that Plaintiff's allegations do not state a claim under California law, which applies a heightened pleading requirement to such allegations in debtor/creditor relationships. Mot., Dkt. 13 at 34.

The elements of a cause of action for intentional infliction of emotional distress are that "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 744-45 (2002). Generally, "[t]he assertion of an economic interest in good faith is privileged, even if it causes emotional distress," although in debtor-creditor relationships, "the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Id.* at 745 n.4.

Plaintiff relies upon *Ragland v. U.S. Bank Nat. Assn.*, 209 Cal. App. 4th 182, 204 (2012) for the proposition that wrongful foreclosure may give rise to a claim for intentional infliction of emotional distress. Opp'n, Dkt. 15 at 23. That case is distinguishable. The plaintiff in that case, Ragland, presented evidence of outrageous conduct unlike that alleged by Plaintiff. Ragland claimed that she had discovered that her mortgage broker had forged her signature on certain documents in her mortgage application. *Ragland*, 209 Cal. App. 4th at 187-88. Until April 2008, her mortgage payments were current, and when she informed her lender of the forgery, it urged her not to make an April payment while it investigated the incident; Ragland cancelled the automatic payment she already had scheduled from her checking account. *Id.* at 188. The next month, the lender sent Ragland its notice of intent to foreclose, and refused to accept her proffered payment. *Id.* at 189. The Court held that although this alleged conduct was not accompanied with threats, violence, or abusive language, it was "so extreme as to exceed all bounds of decency in our society," as required to support an intentional infliction of emotional distress claim. *Id.* at 205.

Plaintiff's Complaint does not contain any allegations approaching those in *Ragland*. There is no claim that Defendant induced her delinquency, or rejected a proffered, lawful payment that would have made her current on her payments. Plaintiff does not otherwise plead extreme or outrageous conduct and does not suggest that she could do so based on the arguments in her opposition.

For these reasons, the Motion is GRANTED with prejudice, *i.e.*, without leave to amend, as to this claim.

### IV.    Conclusion

For the reasons stated in this Order, the Motion is GRANTED IN PART. The Motion is GRANTED WITH PREJUDICE, *i.e.*, without leave to amend, as to the negligent infliction of emotional distress and intentional infliction of emotional distress claims. The Motion is GRANTED WITHOUT PREJUDICE, *i.e.*, with leave to amend, as to the fraud and ECOA claims. In addition, the third and fifth prayers for relief, "[f]or declaration and determination that BANKS is the rightful holder of title to the property . . ." and "[f]or order removing the trustee's deed as a cloud on the title," shall be stricken, but with leave to

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-06429 JAK (FFMx) | Date | November 19, 2014 |
|---|---|---|---|
| Title | Liz Banks v. JPMorgan Chase Bank, N.A., et al. | | |

amend. The Motion is DENIED as to all other claims. Plaintiff shall file any amended complaint no later than December 4, 2014. The Scheduling Order of November 3, 2014, Dkt. 23, is MODIFIED IN PART. The last day to amend or add parties is extended from November 26, 2014 to December 4, 2014.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer   ak