STRATEGIC LEGAL GROUP, PC
Alan Eighmey, Esq. (CSBN 278782)
alan@norcal-law.com
Claudine Sherron, Esq. (CSBN 296499)
claudine@norcal-law.com
121 West Main Street, Ste. F
Turlock, CA 95380
Tel: (209) 683-1616
Fax: (209) 250-1991
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

LIZ BANKS,

Plaintiff,

vs.

JPMORGAN JPMC BANK, N.A., and DOES 1 to 100, inclusive,

Defendants.

Case No.: 2:14-cv-06429 JAK-FFM

DECLARATION OF CLAUDINE SHERRON IN SUPPORT OF PLAINTIFF LIZ BANKS OPPOSITION TO SUMMARY JUDGMENT

[*Filed concurrently with Plaintiff Liz Banks' Memorandum in Opposition to Summary Judgment, Opposition to Defendant's Statement of Uncontroverted Facts and Plaintiff Liz Banks' Statement of Uncontroverted Facts*]

Complaint Filed: July 15, 2014
FAC Filed: November 26, 2014
Trial Date: September 22, 2015

I, Claudine Sherron, declare a follows:

1. I am an attorney licensed to practice law in the State of California.

2. I am over 18 years old.

3. If required to, I can and will testify competently regarding the information in this


declaration.

4. JPMC agreed to produce informal discovery. However, when they provided the discovery, significant sections were missing and/or redacted specifically relating to servicing notes for loss mitigation that ended in July, 2013. The omission appears intentional, as Mr. Summerford testified loss mitigation notes are produced by entering a date range. Summerford Deposition 72:1-20.

5. JPMC refused to produce its standards for modifying loans

6. JPMC continued to monitor the equity in the Property throughout their servicing of the loan. BPO from JPMC stated the house was worth $1,825,750 on June 5, 2012.

7. Despite arrangements to provide informal disclosures of servicing records agreed to early on, JPMC intentionally delayed disclosing even the most basic servicing records, withholding the vast majority of the over 4,000 documents it disclosed, until a few days before its corporate representative was deposed.

8. The late disclosures made impossible identifying, much less deposing, critical witnesses; for instance, the document identifying Cheryl Ross as the person who decided not to evaluate Ms. Banks for a modification in 2012 and reject her application was not disclosed until July 28, 2014

9. Even now, JPMC has withheld critical information – such as its "investigation" of Ms. Banks's income, and loss mitigation notes after 2013, and customer service notes, written standards or policies about what documents it requires to underwrite loans – without so much as a privilege log

10. JPMC negotiated over the dates for SPOC Lisa Martinez – the person who communicated directly with Ms. Banks from November 2012 through August 23, 2013, and demanded that JPMC not consider her subsequent applications (a current JPMC employee) – for 22 days, then refused to accept service for her claiming they

didn't have permission (after already accepting service); then later again accepted service, but then objected that the notice was insufficient

11. JPMC refused to produce its standards for modifying loans.

12. JPMC foreclosed on well over 175 qualifying homes and if they did not properly report such to their primary regulator they are clearly in violation of the code.

13. JPMC delayed the deposition of its person most knowledgeable by making him available only a week before the discovery cutoff.

14. Chase disclosed over 4,000 pages of discovery after close of business on July 23, 2015. The late disclosures made it impossible to identify, much less depose, critical witnesses; for instance, the document identifying Cheryl Ross as the person who decided not to evaluate Ms. Banks for a modification in 2012 and reject her application. *See.* See Summerford Depo. Exh. 102 at 1270

15. Chase disclosed additional servicing records, Exh. 89, the night before the 30(b)(6) deposition.

16. Chase noticed the depositions of Galaxy Gaming, Charles Everhardt, John Yedinak, and Terme Bancorp variously on July 30 and 31 to be taken in Chicago, Ill.

17. Chase then on July 17, 2015 changed Charles Everhardt to Miami on July 31, 2015, the same day as the already scheduled Chicago deposition.

18. JPMC then on July 24, 2015 changed Charles Everhardt's deposition to August 3, 2015.

19. Mr. Summerford testified he was not sure why Exh. 94, the LMT3 subscreen, went back only to 1992. (Summerford Depo. pp. 92)

20. Chase never disclosed written policies or standards relating to its review of Banks' loan modification

21. Chase has not disclosed any documents relating the "LIO" investigation, standards

applied, or report;

22. Chase's corporate representative Jeremy Summerford had no knowledge relating to the investigation or report. (*See:* Summerford Deposition 112:13-118:16)

23. Chase has refused to provide a privilege log relating to this or any other documents withheld.

24. Attached hereto as Exhibits A through F are true and correct copies of documents

The following documents were requested and are likely to preclude summary judgment by leading to materials fact:

25. Banks requested JPMC's mortgage Modification Policies and Guidelines for the applicable period of Banks modification requests.
    a. Would demonstrate whether Banks was not treated according to set policies and guidelines or held to different standards unilaterally set to keep her in loss mitigation limbo

26. Banks Requested communications concerning the modification policies and guidelines as they apply to her
    a. Would demonstrate if Banks had modification guidelines that were imposed specifically on her and not on other applicants and why she was continually solicited to reapply with approximately $1 million dollars in equity

27. Banks Requested information on and from the investor regarding the servicing agreement, investor guidelines on modifications and changes to loan terms and the name and contact information for the investors.
    a. Would demonstrate JPMC was not honest with Banks when they told her they requested non-standard documents to prove her income due to investor requirements
    b. Would demonstrate if JPMC was negligent in not following investor guidelines by not immediately upon receipt of property value estimates denying Banks' medication application

28. Banks Requested a complete and un-redacted employee contact log
    a. Banks was only provided with LMTN notes through July 10, 2013 and only partial notes from the other JPMC note tracking systems even though they serviced Bank's loan through the foreclosure in June of 2014.
    b. Full un-redacted service notes would show if JPMC actions met with all HBOR requirements.
    c. Full un-redacted notes would show the statutory SPOC requirements were not followed.
    d. Full un-redacted notes would show JPMC representatives did not follow proper guidelines in reviewing Banks modification application when they determined the value of her property

e. Full un-redacted notes would show Banks was treated differently than others applying for a modification because she had so much equity and JPMC could increase their fees by not foreclosing immediately
f. Full-unredacted copies would show Banks submitted a 2014 application

29. Banks requested a list of employee names and matching employee identification numbers that appeared in the various call logs
    a. Employee names and matching identification numbers would allow Banks to determine what employees that took what actions on her account and allow her to do proper discovery with those individuals
    b. Employee names and matching identification numbers would allow Banks to determine the SPOC who was assigned to the account and match the proper conversations and instructions given to Banks with the correct SPOC
    c. Employee names and matching identification numbers would allow Banks to show the violations of the single point of contact requirements for each individual or team of SPOC's

30. Banks requested all communications relating to the bankruptcy notices of Vincent C. Riley, Ralph Zunker and Dianne Miller which were submitted to JPMC's trustee with Banks' signature and notary signature forged and ultimately stayed Banks' foreclosure
    a. Would demonstrate the negligence of JPMC in the servicing of Banks account
    b. Would demonstrate this activity did not trigger a fraud investigation to protect Banks' and thus negligence on the part of JPMC
    c. Is likely connected to the extensive amount of time Banks' staying in loss mitigation limbo while being continuously solicited to reapply
    d. Would demonstrate fraud committed against Banks

31. Banks requested communications relating to the review of her modification request or a change of loan terms relating to Banks
    a. Would demonstrate Banks was held to a different standard than others applying for a modification
    b. Would demonstrate that Banks was not assigned an effective SPOC who kept the applicant informed of the status of her modification and foreclosure options
    c. Would show that Banks was not properly notified of the correct status of her modification and thus JPMC's violation of HBOR's SPOC requirements
    d.
32. Banks requested documentation showing the description, definition and use of the term "HMP_Trial_Initial_App"
    a. Would demonstrate that Banks was reviewed only under HAMP guidelines
    b. Would demonstrate that Banks application was an "Initial App" and afforded the protections under HOBOR

33. Banks requested communications regarding the home inspections conducted on Banks residence
    a. Such inspections are charged against Banks account and go directly toward showing damages

      b. Such inspections show the value of Banks residence which is disputed by JPMC
      c. The value of Banks home also is an integral part of the NPV valuation which is required for modification and would show if Banks would never have qualifed for a modification

34. Banks requested records of all employees who spoke to Banks, direct supervisors of those employees and any leaders or groups or teams to which they belonged
      a. Such records would show if any conversations or dealings that Banks had with JPMC were with the SPOC or a member of her SPOC's team and thus their inadequate handling of her application
      b. Would show there were issues with employees who were working with Banks and who were negligent in the handling of her account
      c. Such records would allow Banks to determine the employees that took actions on her account and allow her to do proper discovery with those individuals

35. Banks requested bonus plan information for employees who were in the role of a SPOC or their supervisors
      a. Such records would show potential motivation to keep Banks in loss mitigation limbo for approximately 30 months creating harm to Banks
      b. Shows JPMC encouraged employees to stretch out and deny modification so that JPMC may earn extra servicing fees

36. Banks requested case information for every JPMC mortgage holder form June 1, 2013 to January 31, 2014 who were noted in JPMC records as linked with a bankruptcy even though their name was not listed on the bankruptcy notices
      a. Such records would show a pattern of practice of JPMC to fraudulently enrich themselves and gain extra servicing fees by coding properties with equity as being in bankruptcy and thus a reason to continually stay the foreclosure
      b. Such records would show the action of submitting fraudulent bankruptcy notices to the trustee to delay a sale and enrich themselves is a pattern.
      c. Such records would show the possibility of negligence on Banks account
      d. Such records would show the possibility of fraud against Banks account

37. Banks requested the instructions to the foreclosure trustee, along with any changes, additions or modifications of those instructions and their responses as related to Banks
      a. Such records would show JPMC's instructions to the trustee regarding the foreclosure and the continuous delay thereof

38. Banks requested all electronic storage devises, hard drives, USB drives and floppy drives for all customer service specialists who spoke with Banks and the drives of their supervisors
      a. Such records would show information not in JPMC note systems that would show negligence or fraud
      b. Such records would show communications between customer service specialists and their supervisors that would show the identities of the people who negligently handled Banks' application

39. Banks requested any voice recordings with Banks and any CAS or voice recording that referenced Banks
    a. Such records would show the ineffectiveness of the SPOC
    b. Such records would show the exact instructions or lack thereof given to Banks
    c. Such records would show the conflicting instructions given to Banks
    d. Such records would show negligence in the handling of Banks modification

40. Banks requested a copy of the terms agreed to by JPMC in the Stipulated Settlement in *US v Bank of America*, Civil Case No 120361, US District Court, DC
    a. Such records would show that JPMC violated the settlement agreement and therefore violated the California HBOR rules
    b. Such records would show that JPMC violated the settlement agreement and therefore should not be afforded the protections granted by the agreement

41. During meet and confer discussions Plaintiff Counsel readily agreed to limit time frames to relevant times during modification requests for production.

42. Plaintiff made her first request for discovery September 29, 2014

43. Plaintiff made another request on October 28, 2014

44. Plaintiff made another request for discovery on January 29, 2015

45. Plaintiff sent another email JPMC counsel on February 10, 2015

46. Plaintiff counsel sent an email on June 30, 2015 outlining expectations for discovery and addressing short time frames for discovery.

47. Plaintiff counsel has had several verbal conversations regarding the need to get discovery started.

48. During the deposition of Jeremy Summerford, JPMC counsel was asked why they were claiming privilege regarding documents and yet had not provided a privilege log.

49. JPMC counsel responded he would have one prepared. *See:* Summerford Depo. pp. 166:10-25

50. No privilege log has been provided nor have documents JPMC claims are priviledged.

Respectfully Submitted:

August 12, 2015

/s/ Claudine Sherron
Strategic Legal Group, PC
Attorney for Plaintiff
Liz Banks

I.

August 12, 2015

Respectfully Submitted,

____/s/ Claudine Sherron___
Claudine Sherron, Attorney
Strategic Legal Group, PC
Attorney for Plaintiff Liz Banks