# EXHIBIT "A"

SLG-Banks000100

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZ BANKS,<br><br>       *Plaintiff,*<br><br>v.<br><br>CHASE BANK, N.A.; DOES 1 to 100, inclusive,<br>       *Defendant.* | CASE NO.:  2:14-cv-6429-JAK-FFM<br><br>DECLARATION OF LIZ BANKS<br><br>Date of Filing:  July 15, 2015<br>FAC Filed:     November 26, 2014<br>Trial Date:      September 22, 2015 |

I Liz Banks declare:

1. I am the Plaintiff in this case. I am over 18 years of age. I have personal knowledge of the facts stated below, and if I were called as a witness, I could competently testify about what I have written in this declaration.

2. Regarding my Sworn Statement in support of Petition for Interim Attorney's Fees and Costs and Experts' Fees and Costs, filed on March 25, 2013 in the Circuit Court of Cook County, Illinois, County Department – Domestic Relations Division, in Banks v. Banks, case no. 12D05458 I state the following.

3. I had no money to pay my attorneys, The Law firm of Berry H. Greenberg, to defend me in the divorce petition.

4. All the money I was receiving at that time was going to living expenses.

5. I was told by the attorney representing me in the divorce proceeding that I needed to sign this document so they could be paid.

SLG-Banks000101

6. I was working for myself as an independent contractor at the time and did not have the steady stream of income as an employee would have with a company

7. I explained this situation to Mr. Greenburg

8. My husband Ernie Banks did pay the house payment, insurance and other household expenses of the marriage up to the time he got ill and this petition was filed so I was dependent on him for support.

9. Regarding the additional income I started receiving in April 2014. This money came from my husband Ernie Banks.

10. My husband Ernie Banks received a new contract to use his name and likeness.

11. This contract paid Ernie Banks $8,000 a month.

12. This money went to a company owned or controlled by his trust. This contract was not through Ernie Banks International or the 500 Home Run Club.

13. Ernie Banks and I had a verbal agreement that the proceeds of this new contract would come to me as his contribution to the household income.

14. Ernie started paying me in personal checks of $8,000 a month.

15. Upon the advancement of his illness and subsequent death this money stopped being sent to me.

16. I received the last payment from this source of income in December 2014.

17. This money and contract is now part of the litigation surrounding my late husband's estate.

18. Regarding the modification process of my loan.

19. Throughout the entire process I was barraged by many different representatives of JPMC who told me to submit many different documents.

SLG-Banks000102

20. I continued to comply with each requests for documents even when they seemed repetitive, unnecessary or outlandish.

21. Some of the items requested by JPMC did not belong to me nor were in my possession and were sensitive in nature, this caused me issues when I tried to comply with JPMC's requests

22. I was continually asked by JPMC representatives to send paystubs

23. I continually sent copies of the statements Galaxy Gaming II, Inc. gave me to JPMC

24. I was continually told that Galaxy Gaming IL, Inc. statements were not good enough

25. I was told by JPMC representatives to get copies of the canceled checks that I cashed from Galaxy Gaming IL, Inc. even though I did not have possession of the canceled checks and they did not belong to me.

26. I was then told that I could show the income by having Galaxy Gaming IL, Inc. deposit the money into my checking account

27. I requested from Galaxy Gaming IL, Inc. that they pay me by wire transferring the money into my checking account and Galaxy Gaming IL, Inc did so.

28. I submitted full bank statements to JPMC showing my pay from Galaxy Gaming IL, Inc wired transferred into my bank account. I was told by JPMC representatives that this still was not sufficient proof of my income and that they required canceled check which did not exist because the money was now wire transferred and not paid by check.

29. I received $10,000 per month income from Galaxy Gaming IL, Inc.

30. I reported only my Galaxy Gaming IL, Inc. income on my modification applications for several reasons. First, the application indicated that if I received separation, divorce or alimony payments, reporting them was optional. Second, I did not want to report this private information and I was not sure how long it would continue or how regular it would be. Third,

- 3 -
DECLARATION OF LIZ BANKS
Case No.: 2:14-cv-06429-JAK-FFM

SLG-Banks000103

since my husband was ill and not able to make decisions I did not feel the divorce would be completed.

31. I was confused and unable to determine what was required of me to get a modification however JPMC continued to encourage me to re-apply and re-apply for a modification

32. I would be told by JPMC representatives that I needed additional document and even was notified I was denied because I did not produce the required documents and then within a couple of days I would be encouraged by a JPMC representative to reapply for another modification and sent a new modification package to fill out

33. I would often go to the Chase office at Mindanao Way and Glencoe in Marina Del Rey to fax the requested documents

34. This process continued for approximately 30 months

35. I did not investigate the rules for various modifications. I felt that I was dealing with JPMC and they always assured me that they were working on the correct program for me and I relied on their expertise.

36. The JPMC representatives indicated to me only that I had not been able to "verify" my income with the documents they wanted.

37. No one at JPMC or any other person ever told me that the value of my home might prevent me from getting a loan modification.

38. I relied on JPMC's understanding of its own rules, and its ongoing assurances that it was attempting to evaluate me for a loan modification. I assumed this meant that there was some possibility that I could qualify, given my loan, my home and my reported income.

39. I continued to do as instructed by the JPMC representatives, I continued to submit the applications they sent me, and I continued to fulfil their requests in the effort to save my home because JPMC led me to believe that it was possible to get a modification and save my home.

40. I did not appeal the denial letters I received because I had no knowledge that I could appeal. I was told each time that the foreclosure was on hold and I should reapply and/or send in more documents. The last denial letter I received was in July of 2013. In any event, I likely would not have bothered trying to appeal if JPMC had explained to me that I could never qualify because of the equity in my home.

41. If instead of continually soliciting me to reapply for a modification if JPMC told me that I did not qualify I would have immediately explored other options for keeping my home. I would have spoken to my financial advisor, Mr. Yedinak, who I believe would have suggested that I put my husband, Ernie Banks, back on the title and apply for a reverse mortgage

42. If JPMC had been forthright with my ability to qualify for a modification and told me in 2012 right away that I would not qualify then my husband who's illness had not progressed as badly as in 2014 and who claimed a community interest in the property, could have cured the default.

43. I would have also explored other options for resolving my delinquency. With the great amount of equity in my home, which is in a unique and desirable area, I could have applied for a private party loan or looked to get a loan from a wealthy acquaintance.

44. I did not consider options other than a modification because I felt that JPMC was considering me for a modification. I was dealing with this issue one step at a time and if JPMC had told me truthfully that I would not qualify for a modification I would have sought other alternatives to save my home.

- 5 -
DECLARATION OF LIZ BANKS
Case No.: 2:14-cv-06429-JAK-FFM

SLG-Banks000105

45. When informed by the JPMC representative on the phone that I was in bankruptcy I informed them that I had never filed for bankruptcy. The JPMC representative did not seem to be concerned about my statement that I did not file bankruptcy.

46. I repeated told Chase whenever I called that I was not in bankruptcy.

47. I do not know nor have I had contact with Vincent C. Riley

48. I have reviewed the "Deed of Trust With Assignments of Rents" purportedly between Vincent C. Riley and Liz Banks dated 7/30/2013 and the signature on the document purporting to be mine is not my signature

49. I do not know nor have I had contact with Ralph R. Zunker

50. I do not know nor have I had contact with Dianna K. Miller

51. I have reviewed the "Deed of Trust With Assignments of Rents" purportedly between Ralph R. Zunker and Liz Banks dated 1/5/2014 and the signature on the document purporting to be mine is not my signature

52. I have had no involvement in any bankruptcy filings, I do not know Ralph Zunker or Vincent Riley, I have not made any loans or received any loans form them and had and have no knowledge of who sent bankruptcy-related documents to the foreclosure trustee.

53. I was aware that I had equity in my home at all times while trying to achieve a modification through JPMC  but did not pursue other actions because I felt that JPMC was working with me to do a modification on my home.

54. I believe that value of my home to be in excess of $2,500,000 million dollars

55. This process caused great stress on myself and my family. It further strained the relationship between my husband and I. The stress in the family has affected my daughter. The stress has made me physically ill and caused me to see a physician and take medication.

- 6 -
DECLARATION OF LIZ BANKS
Case No.: 2:14-cv-06429-JAK-FFM

SLG-Banks000106

I declare under penalty of perjury under the laws of the State of California that the foregoing is

true and correct.

DATED: August 12, 2015

_____
Liz Banks, Plaintiff

SLG-Banks000107

# EXHIBIT "B"

SLG-Banks000108

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LIZ BANKS,

        *Plaintiff*,

v.

CHASE BANK, N.A.; DOES 1 to 100, inclusive,

        *Defendant*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:  2:14-cv-6429-JAK-FFM

DECLARATION REGARDING NOTARY SIGNING OF LIZ BANKS

Date of Filing:  July 15, 2015
FAC Filed:        November 26, 2014
Trial Date:       September 22, 2015

I Humberto Navarro declare:

1.      I have personal knowledge of the facts stated below, and if I were called as a witness, I could competently testify about what I have written in this declaration.

2.      I make this declaration based upon my personal knowledge as well as a review of the business records that I keep related to my practice as a California licensed notary public. I maintain these records in the court of my regularly conducted business activities. These records are made at or near the time of the event. It is my regular practice to keep such records in the ordinary course of regularly conducted business activity.

3.      I am a Notary Public registered with the State of California.

4.      I have reviewed the document "DEED OF TRUST WITH ASSIGNMENT OF RENTS (SHORT FORM), dated 01/05/2014, between Liz Banks and Ralph R. Zunker.

- 1 -
DECLARATION REGARDING DIVORCE STATEMENT
Case No.: 2:14-cv-06429-JAK-FFM

SLG-Banks000109

5.   The notary public commission number 1920265 was my notary public commission number on January 5, 2014

6.   I have no recollection of ever seeing the aforementioned Deed of Trust prior to June 9, 2015

7.   I have searched my business records, including my notary journal, and have no record of ever notarizing the aforementioned Deed of Trust. It is my regular practice to record all notarizations in my notary journal at the time of notarization. Attached hereto as Exhibit 2 is a copy of my notary journal entries reflecting all notarizations that I made in January 2014

8.   The signature on the aforementioned Deed of Trust purporting to be that of "Humberto Navarro" is not my signature

9.   I have never met, spoke with, or have any knowledge or connection to Liz Banks

10.   I have no knowledge of, connection to, or any interest in the real property located at 1008 Harbor Crossing Lane, Los Angeles, CA 90292

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: August 12, 2015

Humberto Navarro

- 2 -
DECLARATION REGARDING DIVORCE STATEMENT
Case No.: 2:14-cv-06429-JAK-FFM

0110